### JOE QUICK v. STATE.

No. A-10025.   Sept. 23, 1942.
(129 P. 2d 604.)

Robert R. Rittenhouse, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and J. Walker Field, Asst. Atty. Gen., for defendant in error.

BAREFOOT, P. J. Defendant, Joe Quick, was charged in the court of common pleas of Oklahoma county with the crime of unlawful possession of intoxicating liquor, to wit, 58 pints of tax-paid liquor, was tried before the court, a jury having been waived, was convicted, and sentenced to pay a fine of $50 and to serve 30 days in the county jail, and has appealed.

The only error presented is that the court erred in its refusal to sustain the motion of defendant to suppress the evidence obtained under the search warrant for the reason that it was illegal and void. This contention is first based upon the fact that the search warrant was issued upon an affidavit of an officer and the name inserted therein was "John Doe" and that the place to be searched is "D X Filling Station, located on the Northeast corner of the intersection of Reno and May Avenue Street in Oklahoma County, Oklahoma."

We have had occasion in the recent case of Vincent v. State, 75 Okla. Cr. 116, 129 P. 2d 196, to discuss the

use of the name "John Doe" in search warrants in this state. See, also, Smith v. State, 30 Okla. Cr. 144, 235 P. 273. In the case at bar, as in the Vincent Case, the search warrant was for the purpose of searching the premises described in the affidavit and search warrant, rather than a search of defendant's person.

There can be no question that the description of the premises, as shown by the affidavit and search warrant, is sufficient for the purpose of searching the "D X Filling Station", located "on the Northeast corner of Reno and May Avenue Street in Oklahoma County, Oklahoma."

The real contention of defendant is that evidence on the motion to suppress, which was heard prior to the trial, was that defendant resided in the "D X Filling Station," or in a room in connection therewith, and that this room constituted the home or private residence of defendant, and that the affidavit, and search warrant issued thereon, were insufficient to justify the search of defendant's home or private residence; that all of the intoxicating liquor found by reason of the search was found in the home of defendant and not in the D X Filling Station proper.

On the motion to suppress, evidence was offered by defendant of R. P. Finley, who was the officer that made the affidavit, and that made the search, with the assistance of two Oklahoma City policemen. The other evidence offered was by the defendant, Joe Quick. There were introduced in evidence four pictures, the originals of which are attached to the case-made. These pictures were taken some time after the search and seizure, but reveal both the outside and inside views of the premises.

The affidavit for the obtaining of the search warrant contains statements that the premises described were a place where intoxicating liquors were being had and possessed for the purpose and intent of selling the same in

violation of law and "is using the above described property in connection with and in aid thereof." It further contains the statement:

"Affiant further states that the above described premises is a place of public resort where divers persons congregate for the purpose of buying, selling, drinking and offering for sale intoxicating liquors and where intoxicating liquors are manufactured, bartered, stored and given away in violation of the prohibitory laws of the State of Oklahoma and constitutes a public nuisance."

This affidavit was properly sworn to by the officer before John Connolly, Jr., a justice of the peace. The defendant assumed the burden on the motion to suppress and placed upon the witness stand R. P. Finley, the officer who made the affidavit for the search warrant and who conducted the search. He testified that he was working for the Governor as a state investigator; that he also held a commission as a city policeman of Oklahoma City but was not acting by reason of temporary leave to serve the state as a state investigator. After testifying to the securing of the search warrant and the finding of 58 pints of tax paid whisky, he testified that it was found under an old desk in a room where a bed was located, with very little household furniture.

The defendant testified that he occupied the "D X Filling Station", as described in the search warrant, and that the liquor obtained by the search belonged to him. He further testified that he and his wife resided at the premises and that it was the only home he had; that the liquor was found in the room occupied by him as his home. On cross-examination he described minutely the location and description, both outside and inside of the premises, explaining from the pictures that had been introduced in evidence, and also from a map which was introduced in evidence. He attempted to show to the court that there

were two buildings, one occupied by the filling station and the other as his home. This was based principally upon the fact that the roofs of the two buildings were of separate material. His testimony was, and the pictures reveal, that when you entered the filling station there was an open door space leading into the room which he said he occupied as a home. The only entrance to this room was through the filling station. Officer Finley, at the trial of the case, testified more particularly with reference to the description of the room where the liquor was found, as follows:

"Q. How much whisky did you find there? A. I believe the information shows 58 pints. Q. And where was it in the filling station? A. Well, it was setting under a desk I believe. Under the desk and some back in the corner by the desk. Q. And did you have a conversation with Mr. Quick about whose whisky it was? A. He said it was his."

On cross-examination he testified:

"Q. Mr. Finley, the liquor you found out there. Some of it was in the corner of the room, you say. That wasn't the front room, was it? A. When you open the door—step out of the drive way of the filling station there is a desk there. Q. There was a bed, was there not? A. I believe there is. Q. And cook stove? A. There is a little old square top stove. Q. Well, there is a cook stove there? A. Could be used as a cook stove. Q. What else in there? Rocking chair? A. I don't remember a rocking chair. Probably some chairs. Q. Table in there? A. I don't remember. The desk and a chair and stove I believe is about all that is in the room; and he had some oil. Q. That is the room that opened off of the front room of the filling station, is it not? A. Just as you step out of the drive way of the filling station. Q. Opened off of that room? A. Yes. Q. That is all."

The defendant testified at the trial to the same facts as on the motion to suppress the evidence.

The statute which gives authority to search a private residence is Oklahoma Statutes 1931, section 2639, O. S. A. (Stat. 1941), Title 37, § 88, and is as follows:

"No warrant shall be issued to search a private residence, occupied as such, unless it, or some part of it, is used as a store, shop, hotel, boarding place, or place for storage, or unless such residence is a place of public resort."

It occurs to us that the terms of the affidavit for the search warrant, above quoted, and which was sworn to positively, are sufficient upon which to base the issuance of a search of a private residence and especially is this true where one's residence is situated as the facts in this case reveal. This affidavit, with the facts surrounding it, would justify the finding that this place was being used as a "store", "shop" or "place for storage." The affidavit also recites in positive terms that it was being used "as a place of public resort." The room which defendant used as his home was being used in connection with his business. A door space, at which there wasn't even a door, was the only connecting entrance between the filling station proper and the room occupied as a home or private residence by the defendant. There was no other entrance to this room except through this opening that led from the filling station. There was very scant furniture in the room, no groceries of any kind or description. Located in this room were oil drums used in the business of the filling station. A desk was also located therein and it was in and around this desk that the 58 pints of tax paid liquor was found. Defendant's wife was not present at the time the search was made. Nothing was said by the defendant to the officers that his private residence was being searched. We think that the court had the right to consider these facts and circumstances when the motion to suppress the evidence was

presented. He evidently came to the conclusion that the use of the room where the liquor was found was a subterfuge for the purpose of permitting defendant to unlawfully dispose of intoxicating liquor. The evidence justifies this conclusion.

Finding no error in the record, the judgment of the court of common pleas of Oklahoma county is affirmed.

DOYLE and JONES, JJ., concur.